UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JESSE J. LINDSEY,

    Plaintiff,

    v.                                 CAUSE NO. 3:23-CV-94-DRL-JPK

HENSLEY, MULLAT, EASLEY, and
MACY JACKSON,

    Defendants.

## OPINION AND ORDER

Jesse J. Lindsey, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant.

Mr. Lindsey describes a serious of events in which he alleges that he made several correctional officers at Miami Correctional Facility aware that his cellmate posed a risk to him, but the two were forced to share a cell even after his cellmate had actually attacked him and had exhibited repeated instances of self-harm. As a result, Mr. Lindsey alleges that he suffered a stab wound and other injuries that could have been prevented.

Under the Eighth Amendment, correctional officials have a constitutional duty to protect inmates from violence. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). But, "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). A failure to protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). "[N]egligence, or even gross negligence does not equate to deliberate indifference" and does not state a claim for a violation of the Eighth Amendment. *Johnson v. Dominguez*, 5 F.4th 818, 825 (7th Cir. 2021).

According to the complaint, on Tuesday, March 22, 2022, Mr. Lindsey learned from his unit counselor, Macy Jackson, that his new cellmate would be offender Scott Hatfield. ECF 1 at 6. Mr. Lindsey reports that he immediately protested because he used to work with Mr. Hatfield at Indiana Corrections Industry until a week or two ago, and Mr. Hatfield had threatened to stab him and other coworkers with a seam ripper the day he was fired. *Id.* Mr. Lindsey alleges he told Counselor Jackson that Mr. Hatfield was mentally unstable. In fact, Mr. Lindsey alleges that Mr. Hatfield's mental instability was well known throughout the prison. *Id.* at 6-7. He says Mr. Hatfield has gone for long durations without a cellmate because he has had "incidents" with other cellmates before or he would be on suicide watch. *Id.* at 7. But Counselor Jackson allegedly informed him

2

that there was no alternative to the bed move, and Mr. Hatfield was placed in the cell. *Id.* at 6.

Mr. Lindsey says at the 5:00 p.m. count, when the two were locked in the cell, Mr. Hatfield threatened that he would stab Mr. Lindsey before morning. ECF 1 at 6. Mr. Hatfield sat on his bed and began barking like a dog. *Id.* After count, Mr. Lindsey says he reported his concerns to Sergeant Easley. *Id.* She told him the only way for one of them to be moved out of the cell was if he filed a PREA report.[1] *Id.* He told her he couldn't truthfully file a PREA report, and she told him he was out of luck. *Id.* at 7.

Mr. Lindsey alleges that at the 9:00 p.m. count, he was locked into the cell alone because Mr. Hatfield remained in the dayroom. Mr. Hatfield reportedly requested to go back to Restrictive Housing Unit, from where he had just been released. ECF 1 at 7. During count, the correctional officer on duty called the shift supervisor (who is not named) and explained that Mr. Lindsey felt threatened and described Mr. Hatfield's behavior. *Id.* But the shift supervisor said no bed moves would be approved that evening and would have to wait until the morning. *Id.*

Mr. Lindsey alleges that after the two were locked down for the night, he went to sleep on the top bunk. ECF 1 at 7. But he says he was woken up by Mr. Hatfield pacing the cell, citing the little girls' names he said he molested, and said Mr. Lindsey needed to kill him for their sake. *Id.* Mr. Lindsey says he hit the intercom and reported this to the

---

[1] The Prison Rape Elimination Act of 2003 (PREA), 34 U.S.C. § 30301 *et seq.*, provides for national standards for policies to reduce sexual violence in prison. A PREA report is used to report incidents of sexual abuse or sexual harassment in prison. *See* Indiana Department of Correction, *PREA*, https://www.in.gov/idoc/divisions/prea/.

correctional officer on duty, but she reiterated that she couldn't do anything until the morning per her supervisor. *Id.* at 7.

At 1:30 a.m., Mr. Hatfield allegedly woke Mr. Lindsey up to tell him that he was going to kill him and then kill himself. ECF 1 at 7. He began hitting his head against the wall, yelling, "I'm going to kill you and me." *Id.* at 7-8. Mr. Lindsey fell back asleep but woke up at 2:30 a.m. when Mr. Hatfield stabbed him in his shin area. *Id.* at 8. This made him fall off his bunk and hurt his hand, wrist, and elbow. *Id.* Mr. Lindsey alleges that Mr. Hatfield then began slicing his own wrist and arm with a razor blade. *Id.* He called the correctional officer over the intercom, and a signal was called. *Id.* The responding officer talked Mr. Hatfield down and took him to OSB. *Id.*

These allegations state a claim for failure to protect against Counselor Jackson and Sergeant Easley because they were aware that Mr. Hatfield posed a specific risk to Mr. Lindsey but, as alleged, did not take reasonable steps to prevent the harm.

After Mr. Hatfield was treated for his injuries, Lieutenant Hensley and Sergeant Easley returned him to the cell. ECF 1 at 8. Mr. Lindsey alleges he told them about his injuries and asked that they not put Mr. Hatfield back in the cell with him. *Id.* Lieutenant Hensley said there was nothing she could do until the next bracket and told him that Mr. Hatfield assured them that he was okay now. *Id.* Nevertheless, Mr. Lindsey alleges that Mr. Hatfield assaulted him again and them turned on himself and began cutting his other arm with a razor blade. *Id.* Mr. Lindsey may proceed against Lieutenant Hensley and Sergeant Easley based on these allegations for failing to protect him from harm.

4

After this incident, Mr. Lindsey alleges Mr. Hatfield was removed from the cell by force with the use of OC spray, but he was again returned to the same cell as Mr. Lindsey. ECF 1 at 8. When the morning shift came in around 6:00 a.m., Mr. Lindsey says he reported the situation to Lieutenant Cardi, the supervising officer. *Id.* Lieutenant Cardi let Mr. Lindsey out of the cell and took pictures of his leg and wrist in the day room. *Id.* at 8-9. As he was returning to his cell, he saw Mr. Hatfield rip the bandages off his arm and begin cutting his arm again. *Id.* A signal was called, and Sergeant Mullat and another officer had to use force and again dispersed OC spray in the cell to subdue Mr. Hatfield. *Id.* They took Mr. Hatfield to OSB. *Id.*

Sergeant Mullat returned Mr. Hatfield to the cell again, over Mr. Lindsey's objections. ECF 1 at 9. Mr. Lindsey says he told the sergeant all that had happened over the evening and that he refused to lock down in the cell with Mr. Hatfield. *Id.* Sergeant Mullat allegedly told him if he didn't stop crying, he would move him to an Idle Dorm. *Id.* Lieutenant Cardi informed Sergeant Mullat that Mr. Hatfield had assaulted and stabbed Mr. Lindsey, so Mr. Hatfield should be the one to move. *Id.* But Sergeant Mullat put Mr. Hatfield back in the cell with Mr. Lindsey and told Mr. Hatfield he would find him a bed and cell by himself. *Id.* at 10.

Then Mr. Hatfield allegedly began punching and threatening Mr. Lindsey, and he also ripped off both his bandages in order to start slicing his arms again. ECF 1 at 10. Mr. Lindsey hit the intercom again, and an officer subdued Mr. Hatfield with force to take him to OSB. *Id.* After this point, Mr. Hatfield was put in a cell by himself in another unit. *Id.* These allegations state a claim against Sergeant Mullat, who made the decision to put

5

the two men in the same cell again, despite knowing the history from the past couple of days. There is no indication, however, that Lieutenant Cardi was responsible for any actions that were deliberately indifferent to a risk of harm to Mr. Lindsey, so she will be dismissed.

The remaining allegations do not state a claim. Mr. Lindsey complains that, in addition to the injuries he suffered, his blanket, clothing, and other property, including his television, headphones, and family pictures, was covered in OC spray and blood or otherwise damaged. ECF 1 at 10-11. The property damage does not state a federal claim. The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. IVX. However, a state tort claims procedure that provides a method by which a person can seek reimbursement for the loss of property satisfies the requirements of due process. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy."). Mr. Lindsey has a state post-deprivation remedy available, so cannot pursue a federal due process claim based on the lost property. *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("[Plaintiff] has an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due."); *see also Higgason v. Morton*, 171 F. Appx. 509, 512 (7th Cir. 2006) (Indiana Tort Claims Act precluded Indiana inmate's due process claim arising from the loss of property in his cell).

Grievance Specialist Michael Gapski must also be dismissed. Mr. Lindsey alleges that after the incident, he filed numerous grievances that were never answered. ECF 1 at 12. Mr. Lindsey, however, has no constitutional right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure). Therefore, the unanswered grievances about an already completed event cannot form the basis of a federal claim.

Finally, Mr. Lindsey seeks to sue the Indiana Department of Correction for these events under the Indiana Tort Claims Act. *See* Ind. Code § 34-13-3 *et seq.* The ITCA prohibits tort suits against government employees personally for conduct within the scope of their employment. *See* Ind. Code § 34-13-3-5(b); *see also Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014) ("Under the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment."). Instead, the governmental employer is held liable for its employee's actions: "[g]overnmental entities are subject to liability for torts committed by their agencies or employees unless one of the immunity provisions of the [ITCA] applies." *Minks v. Pina*, 709 N.E.2d 379, 382 (Ind. App. Ct. 1999). However, the Indiana Department of Correction is an arm of the State. *See* Ind. Code § 11-8-2-1 ("There is established in the executive branch of state government a department of correction."). This means that it shares Indiana's Eleventh Amendment immunity, preventing it from being sued in federal court unless an exception applies. *Burrus v. State Lottery Comm'n of Ind.*, 546 F.3d 417, 420 (7th Cir. 2008) ("[S]tate agencies, as arms of the state, are immune

from suit under the Eleventh Amendment."). Here, the ITCA explicitly states that "[t]his chapter shall not be construed as . . . consent by the state of Indiana or its employees to be sued in any federal court." Ind. Code 34-13-3-5(f). This means that Mr. Lindsey cannot bring these potential ITCA claims in federal court. Therefore, the Indiana Department of Correction will be dismissed without prejudice.[2]

For these reasons, the court:

(1) GRANTS Jesse J. Lindsey leave to proceed against Lieutenant Hensley, Sergeant Mullat, Sergeant Easley, and Counselor Macy Jackson in their individual capacities for compensatory and punitive damages for failing to protect him from his cellmate on March 22-23, 2022, in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Cardi and Michael Gapski;

(4) DIMISSES the Indiana Department of Correction WITHOUT PREJUDICE;

(5) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Hensley, Mullat, Easley, and Macy Jackson at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

---

[2] Although the complaint does not seek to state a claim against the Indiana Department of Correction under 42 U.S.C. §1983, the court notes that such an attempt would be futile. As an arm of the State, it is not a "person" who can be sued for money damages under 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989).

(5) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), Hensley, Mullat, Easley, and Macy Jackson to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

July 7, 2023               *s/ Damon R. Leichty*
                           Judge, United States District Court