UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JESSE J. LINDSEY,

    Plaintiff,

v.   CAUSE NO. 3:23-CV-94 DRL

HENSLEY *et al.*,

    Defendants.

OPINION AND ORDER

Jesse J. Lindsey, a prisoner without a lawyer, is proceeding in this case against Lieutenant Hensley, Sergeant Mullat, Sergeant Easley, and Counselor Macy Jackson "in their individual capacities for compensatory and punitive damages for failing to protect him from his cellmate on March 22-23, 2022, in violation of the Eighth Amendment[.]" ECF 8 at 8. Lt. Hensley and Sgt. Mullat filed a motion for summary judgment, arguing they did not violate Mr. Lindsey's Eighth Amendment rights because he suffered at most a *de minimis* injury as a result of their alleged conduct. ECF 65.[1] Mr. Lindsey filed a response, and the defendants filed a reply. ECF 71, 74. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such

---

[1] Sgt. Easley and Counselor Jackson have not moved for summary judgment.

that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To establish a claim against prison officials for failure to protect, a plaintiff must provide evidence: "(1) that he was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quotations omitted). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

In their summary judgment motion, Lt. Hensley and Sgt. Mullat do not dispute that Mr. Lindsey was incarcerated under conditions posing a substantial risk of serious harm, or that they were aware of that risk. Instead, both defendants argue summary

2

judgment is warranted in their favor because Mr. Lindsey suffered no more than a *de minimis* injury related to their alleged acts. They rely mostly on Mr. Lindsey's deposition testimony, where he testified to certain facts.

On March 22, 2022, Counselor Jackson informed Mr. Lindsey that an inmate named Scott Hatfield would be placed with him in his cell. ECF 78 at 30. Mr. Lindsey told Counselor Jackson that he had worked with Mr. Hatfield in the past and Mr. Hatfield had threatened to stab him. *Id.* at 35, 38-39. Counselor Jackson told Mr. Lindsey there was no alternative to Mr. Hatfield being placed in his cell. *Id.* at 35-36. As soon as Mr. Hatfield arrived in Mr. Lindsey's cell, he began barking like a dog and stated he was going to kill Mr. Lindsey. *Id.* at 39-40. Mr. Lindsey reported his concerns to Sgt. Easley and she told him the only way for him to be moved out of the cell was if he filed a PREA report. *Id.* at 50-51. After Mr. Lindsey and Mr. Hatfield were locked down for the night, Mr. Lindsey went to sleep and was awakened by Mr. Hatfield pacing the cell, barking, and stating Mr. Lindsey needed to kill him. *Id.* at 67-68. Mr. Lindsey went back to sleep but woke up around 2:30 a.m. when Hatfield stabbed him in his shin area. *Id.* at 71-74. Mr. Lindsey fell off his bunk and hurt his hand, wrist, and elbow. *Id.* at 74-75, 80. Mr. Hatfield then began cutting himself. *Id.* at 81. Mr. Lindsey called the correctional officers over the intercom, a signal was called, and both Mr. Hatfield and Mr. Lindsey were removed from the cell and taken to the medical unit. *Id.* at 80-82.

Later that day, Mr. Hatfield was returned to Mr. Lindsey's cell by Lt. Hensley and Sgt. Easley. ECF 78 at 87. Mr. Lindsey showed the officers his injuries, told them Mr. Hatfield had stabbed him for no reason, and asked that they not put Mr. Hatfield back in

3

the cell with him, but the officers responded they were "not doing bed moves." *Id.* at 87, 91-92. After Mr. Hatfield was placed back in the cell, he immediately assaulted Mr. Lindsey by throwing a couple of punches at him before Mr. Lindsey pushed him away. *Id.* at 93. The punches contacted the back of Mr. Lindsey's head, but Mr. Hatfield "wasn't a big guy." *Id.* at 96. Mr. Hatfield then began cutting his own arm and was again removed from the cell and taken to the medical unit. *Id.* at 93, 96-8. Mr. Lindsey was not removed from the cell on this occasion because he was "not harmed" and did not require immediate medical treatment. *Id.* at 98.

Less than an hour later, Mr. Hatfield was returned to Mr. Lindsey's cell a second time. ECF 78 at 99-100.[2] Once Mr. Hatfield returned to the cell, he immediately began ripping the bandages off his own arm and cutting himself and again swung at Mr. Lindsey and hit him a couple of times in the back of the head. *Id.* A signal was called, and a correctional officer had to use OC spray in the cell to subdue Mr. Hatfield and remove him from the cell. *Id.* at 101. Later that day, Sgt. Mullat returned Mr. Hatfield to the cell a third time over Mr. Lindsey's objection. *Id.* at 106, 109. This time, Mr. Hatfield immediately began cutting himself but did nothing to harm Mr. Lindsey. *Id.* at 109-10. Mr. Lindsey informed the correctional officers Mr. Hatfield was cutting himself again, and Mr. Hatfield was removed from the cell. *Id.* Mr. Lindsey never saw Mr. Hatfield again. *Id.* at 112.

---

[2] In his deposition testimony, Mr. Lindsey did not specify which correctional officers were involved in returning Mr. Hatfield to his cell on this occasion. ECF 78 at 99-100. In his complaint and sworn affidavit, Mr. Lindsey attests Sgt. Mullat was involved in returning Mr. Hatfield to his cell on this occasion. ECF 1 at 9-10; ECF 71-2 at 5.

4

Lt. Hensley and Sgt. Mullat argue summary judgment is warranted in their favor because they were not personally involved in any constitutional violation, as they were only involved in incidents that resulted in *de minimis* physical injuries. Specifically, it's undisputed Mr. Hatfield was placed into Mr. Lindsey four separate times that resulted in four separate incidents. During the first incident, Mr. Hatfield stabbed Mr. Lindsey in the shin and was removed from the cell. During the second incident, Mr. Hatfield punched Mr. Lindsey in the back of the head and was removed from the cell. During the third incident, Mr. Hatfield again punched Mr. Lindsey in the back of the head and was removed from the cell. And during the fourth incident, Mr. Hatfield only cut his own arms and did nothing to harm Mr. Lindsey before he was removed from the cell. Lt. Hensley and Sgt. Mullat argue that, because it's undisputed they were not involved in initially placing Hatfield into Mr. Lindsey's cell, and were only involved in the latter incidents that involved only *de minimis* injuries, summary judgment is warranted in their favor. Each defendant will be addressed in turn.

A. *Lt. Hensley.*

Here, it's undisputed Lt. Hensley first became involved in this case by placing Mr. Hatfield into Mr. Lindsey's cell before the second incident, when Mr. Hatfield assaulted Mr. Lindsey by "throwing a couple of punches at him," which contacted the back of Mr. Lindsey's head. ECF 78 at 93. Lt. Hensley argues summary judgment is warranted in his favor because Mr. Lindsey suffered at most a *de minimis* physical injury during this incident. ECF 66 at 11-12. Lt. Hensley notes Mr. Lindsey testified he was not removed from his cell after this incident because he was "not harmed" and Mr. Lindsey did not

5

receive any medical treatment related to this assault. *Id.* at 11; *see* ECF 65-1 at 98. In his response, Mr. Lindsey argues the injuries he sustained during this incident were more than *de minimis*. He attests that, because of the punches he sustained to the back of his head during this incident, he experienced headaches that he believed were caused by head trauma and is currently scheduled to receive a brain scan from an outside physician. ECF 71-2 at 5.

It is true that an inmate proceeding under § 1997e "must demonstrate a physical injury before he may seek damages for mental or emotional injuries." *Arnold v. Williams*, No. 07-1178, 2010 WL 2697156, 2 (C.D. Ill. July 7, 2010) (citing 42 U.S.C. § 1997e(e)). It is also true that "a *de minimis* physical injury does not satisfy the requirements of 42 U.S.C. § 1997e(e)." *Id.* (citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997)). However, "no serious or significant injury is required." *Flynn v. Baker*, No. 1:10-CV-1209-LJM-DKL, 2013 WL 5013517, 2 (S.D. Ind. Sept. 12, 2013). Therefore, the PLRA does not require "objective evidence of physical injury." *Lynch v. Flowers Foods Specialty Group*, No. 08-CV-554, 2011 WL 3876951, 5 (E.D. Wis. Aug. 31, 2011) (injury more than *de minimis* where the plaintiff asserted he bled from the mouth and experienced numbness, headaches, and loss of taste in his tongue).

Here, it's undisputed that (1) Lt. Hensley returned Mr. Hatfield to Mr. Lindsey's cell before the second incident despite Mr. Lindsey telling him that Mr. Hatfield had just stabbed him for no reason, (2) Lt. Hensley responded they were "not doing bed moves," and (3) once Mr. Hatfield was returned to the cell he immediately punched Mr. Lindsey several times in the back of the head. Though it's true Mr. Lindsey did not need to be sent

for immediate medical treatment following this incident, a reasonable jury could credit Mr. Lindsey's testimony that he later experienced headaches as a result of these punches and conclude he sustained more than a *de minimis* physical injury. *See Lynch*, 2011 WL 3876951 at 5.

Moreover, "physical injury is not the only type of injury actionable in a prisoner's civil rights suit." *Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012). Specifically, though it's true that "a prisoner cannot obtain compensatory damages without proving a physical injury," the "prisoner can still obtain injunctive relief, nominal damages, and punitive damages." *Id.* Thus, even if the jury were to conclude Mr. Lindsey sustained no more than a *de minimis* physical injury during this incident, it could nevertheless conclude Mr. Lindsey is entitled to nominal and punitive damages against Lt. Hensley. *See id.*; *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (holding § 1997e(e) does not foreclose an action for nominal or punitive damages for an Eighth Amendment violation involving no physical injury). Based on the evidence in the record, it is for the jury to determine what damages, if any, Mr. Lindsey is entitled to against Lt. Hensley.

B. *Sgt. Mullat.*

Sgt. Mullat argues summary judgment is warranted in his favor because he was only involved in returning Mr. Hatfield to Mr. Lindsey's cell before the fourth incident, and Mr. Lindsey did not sustain any injuries during this incident. ECF 66 at 12-13. It is undisputed that Mr. Hatfield only harmed himself during the fourth incident by pulling off his bandages and cutting his wrists, and he did not physically assault Mr. Lindsey during this incident. Sgt. Mullat notes that Mr. Lindsey did not testify at his deposition

that Sgt. Mullat was involved in any of the three earlier incidents during which Mr. Hatfield physically attacked Mr. Lindsey. *Id.*

In his response, Mr. Lindsey argues Sgt. Mullat was not only involved in placing Mr. Hatfield in his cell before the fourth incident (where Mr. Hatfield only cut himself), but also before the third incident (where Mr. Hatfield struck Mr. Lindsey in the back of the head and then cut himself). ECF 71 at 8-9. Specifically, Mr. Lindsey attests Sgt. Mullat returned Mr. Hatfield to his cell before the third incident over Mr. Lindsey's objections and despite Mr. Lindsey informing Sgt. Mullat of the earlier assaults, and that Mr. Hatfield immediately began punching Mr. Lindsey once Sgt. Mullat returned him to the cell on this occasion. ECF 71-2 at 5.

Here, Sgt. Mullat is correct that Mr. Lindsey did not explicitly testify at his deposition that Sgt. Mullat was involved in returning Mr. Hatfield to his cell before the third incident. However, Mr. Lindsey provides a sworn attestation that Sgt. Mullat *was* involved in returning Mr. Hatfield to his cell before the third incident, and nothing in Mr. Lindsey's earlier deposition testimony explicitly contradicts that sworn assertion. Specifically, if Mr. Lindsey had explicitly testified at his deposition that Sgt. Mullat was *not* involved in returning Mr. Hatfield to his cell before the third incident, Mr. Lindsey would be precluded from now contradicting that testimony. But the mere fact that Mr. Lindsey did not explicitly mention Sgt. Mullat in his deposition testimony about the third incident goes only to Mr. Lindsey's credibility, which is not suited to summary judgment. *See Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011) (at the summary judgment stage, the court cannot "weigh conflicting evidence" or "make

8

credibility determinations," as this is "the province of the jury") (citations omitted). A reasonable jury could credit Mr. Lindsey's sworn assertion in his affidavit that Sgt. Mullat was involved in returning Mr. Hatfield to his cell before the third incident and conclude Sgt. Mullat was liable in the same manner as Lt. Hensley for Mr. Lindsey's injuries. Put otherwise, a reasonable jury could conclude that (1) Sgt. Mullat returned Mr. Hatfield to Mr. Lindsey's cell before the third incident, when Mr. Hatfield struck Mr. Lindsey in the back of the head, and (2) Mr. Lindsey suffered more than a *de minimis* physical injury during this incident. And, as discussed above, a reasonable jury could conclude Mr. Lindsey is entitled to nominal and punitive damages against Sgt. Mullat even if it concludes he sustained no more than a *de minimis* physical injury related to the third incident. *See Thomas*, 697 F.3d at 614; *Calhoun*, 319 F.3d at 939. Summary judgment is not warranted in favor of Sgt. Mullat on this claim.

Accordingly, a reasonable jury could conclude that both Lt. Hensley and Sgt. Mullat were responsible for failing to protect Mr. Lindsey by returning Mr. Hatfield to his cell before the second and third incidents, respectively. The defendants don't dispute that they knew Mr. Hatfield posed a risk of serious harm to Mr. Lindsey on both occasions; they have not shown that Mr. Lindsey suffered only a *de minimis* injury on either occasion; and a reasonable jury could conclude they are liable for nominal and punitive damages even if Mr. Lindsey's injuries were only *de minimis*. For these reasons, the defendants' motion for summary judgment (ECF 65) is DENIED.

SO ORDERED.

September 11, 2025                                     *s/ Damon R. Leichty*
                                                        Judge, United States District Court